UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LUIS HERNANDEZ,

                          Petitioner,                         **OPINION AND ORDER**
        -against                                         10-cr-281 (SJF)(ARL)
                                                   14-cv-4111 (SJF)

UNITED STATES OF AMERICA,

                          Respondent.
-----------------------------------------------------------------X
FEUERSTEIN, District Judge:

On June 23, 2014, petitioner Luis Hernandez ("Hernandez") filed a *pro se* motion

pursuant to 28 U.S.C. § 2255 to vacate his sentence of imprisonment on the ground that the

Supreme Court's decision in *Descamps v. U.S.*, 133 S.Ct. 2276 (2013), rendered it improper.

(*See* Motion to Correct Sentence under 28 U.S.C. § 2255 ("Mot.") (Cr. Dkt. 468)).   On

November 21, 2014, the United States of America (the "Government") filed a response in

opposition to Hernandez's motion, and on March 10, 2015 Hernandez filed a reply brief in

further support of his motion.   (*See* Government's Response in Opposition ("Opp.") (Cr. Dkt.

484); Hernandez's Reply to the Government's Response ("Reply") (Civ. Dkt. 10)).   On July 15,

2016, Hernandez, represented by the Federal Defenders, filed a supplemental brief in further

support of his motion, arguing that his sentence must be vacated in light of the Supreme Court's

decision in *Johnson v. U.S.*, 135 S.Ct. 2551 (2015).   (*See* Brief for Petitioner Luis Hernandez, Jr.

("Johnson Br.") (Cr. Dkt. 511)).   On August 26, 2016, the Government filed a supplemental

opposition brief, and on August 31, 2016, Hernandez filed a supplemental reply brief.   (*See*

Government's Supplemental Response Brief in Opposition to Defendant's Supplemental Brief

("Johnson Opp.") (Cr. Dkt. 519); Hernandez's Letter Reply ("Johnson Reply") (Cr. Dkt. 520)).

For the following reasons, Hernandez's motion is denied in its entirety.

I.    **BACKGROUND**

    A.    **Relevant Procedural History Preceding § 2255 Motion**

On October 13, 2010, a federal grand jury in the Eastern District of New York returned a

superseding indictment, charging Hernandez, a member of the Latin Kings street gang, with:

conspiring with other Latin Kings members to commit robbery affecting interstate commerce in

violation of 18 U.S.C. § 1951(a) (Count Two); attempting to commit robbery affecting interstate

commerce in violation of 18 U.S.C. § 1951(a) (Count Three); and brandishing a firearm during

the course of the attempted robbery in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) (Count Four).

(*See* Superseding Indictment (the "Indictment") (Cr. Dkt. 147) at 2-7).   In April 2011, the

Government and Hernandez entered a plea agreement, pursuant to which, *inter alia*, Hernandez

agreed to plead guilty to Count Two of the Indictment (conspiracy to commit robbery affecting

interstate commerce) and the Government agreed to move the Court for a two-level reduction

pursuant to § 3E1.1(b) of the United States Sentencing Guidelines (the "Guidelines") and dismiss

Count Four of the Indictment (brandishing a firearm in violation of § 924(c)(1)(A)(ii)), a charge

that would have carried a consecutive seven-year sentence.   (*See* Plea Agreement (Cr. Dkt. 519-

1) at ¶¶ 1, 2, 5).   The plea agreement indicates that § 1951(a) carries a maximum term of

imprisonment of 20 years.   (*Id.* ¶ 1(a)).   It contains the following language regarding

Hernandez's possible sentence under the Guidelines:

> …The Office estimates the likely adjusted offense level for Count
> Two under the Sentencing Guidelines to be level 30, which is
> predicated on the following Guidelines calculation:

> Base Offense Level (§ 4B1.1(b))                     32
>
> Less: Acceptance of Responsibility (§ 3E1.1(a))      -2
>
> Total:                                               30

> This level carries a range of imprisonment of 168 to 210 months,
> assuming that the defendant falls within Criminal History Category
> VI.   If the defendant pleads guilty on or before April 22, 2011, the
> government will move the Court, pursuant to [Guidelines] §
> 3E1.1(b), for an additional one-level reduction, as well as an
> additional one-level reduction for a global disposition, resulting in
> an adjusted offense level of 28.   This level carries a range of
> imprisonment of 140 to 175 months, assuming that the defendant
> falls within Criminal History Category VI.   The defendant
> stipulates to the above Guidelines calculation.

(*Id.* at ¶ 2).   The plea agreement also provides that Hernandez "agrees not to file an appeal or

otherwise challenge by petition pursuant to 28 U.S.C. § 2255 or any other provision the

conviction or sentence in the event that the Court imposes a term of imprisonment of 188 months

or below."   (*Id.* at ¶ 4).

On April 20, 2011, Magistrate Judge Arlene Lindsay held a plea allocution hearing,

during which Hernandez, represented by Robert L. Moore, Esq., testified that he "and others

conspired to rob a known drug dealer for drugs and money in Kings Park" and pled guilty to

Count Two of the Indictment.   (Transcript of Criminal Cause for Pleading before the Honorable

Arlene R. Lindsay (Cr. Dkt. 260) at 42-43).   Prior to entering his guilty plea, upon explanation

and questioning from Magistrate Judge Lindsay, Hernandez affirmed that: he was satisfied with

the assistance he had received from Moore; he had discussed the Indictment and its charges with

Moore; he understood that he intended to plead guilty to conspiracy to commit Hobbs Act

robbery, which carries a maximum term of imprisonment of 20 years; he had read the plea

agreement, reviewed it with Moore, and understood it; he understood that the Government's

estimated Guideline level of 28 equated to a sentencing range of 140 to 175 months

imprisonment under the Guidelines, which this Court had discretion to deviate from; and he

understood that, pursuant to the plea agreement, he was waiving his right to appeal any sentence

of 188 months imprisonment or less. (*Id.* at 13, 27-31, 42-45). Magistrate Judge Lindsay

accepted Hernandez's guilty plea and recommended that this Court do the same. (*Id.* at 44-45;

*see also* 4/20/2011 Minute Entry (Cr. Dkt. 259)). On May 10, 2011, this Court adopted

Magistrate Judge Lindsay's recommendation and accepted Hernandez's guilty plea. (Cr. Dkt.

277).

On October 14, 2011, the United States Probation Department submitted a revised

presentence investigation report ("PSR") and sentence recommendation. The PSR

recommended a base offense level of 32 under the "career offender" provision of the Guidelines,

§ 4B1.1, based upon the instant conviction for conspiracy to commit Hobbs Act robbery, "a

felony that is a crime of violence," and "at least two prior felony convictions for crimes of

violence and/or controlled substance offenses." (PSR ¶¶ 15, 32, 53). The prior felony

convictions upon which the PSR relied to recommend a career offender sentence were: (1) a

January 24, 2006 New York State conviction for third-degree burglary; (2) a January 24, 2006

New York State conviction for third-degree criminal sale of a controlled substance; and (3) a

June 29, 2009 New York State conviction for attempted second-degree robbery, for which

Hernandez was sentenced to three years state imprisonment. (*See id.* ¶¶ 49-51, 53). The

Probation Department, concurring with the Government's recommendation of a three-point

reduction but not a one-point "global disposition" reduction, ultimately recommended a total

offense level of 29, which carried a corresponding Guidelines range of 151 to 188 months

imprisonment. (*See id.* ¶ 3, 25-34). The Probation Department recommended 151 months

imprisonment to be served consecutive to an undischarged term of state imprisonment for the

2009 state attempted robbery conviction. (*See* U.S. Probation Department Sentence

Recommendation at 1).

On December 9, 2011, Hernandez filed an objection to the PSR, arguing, *inter alia*, that

he should not be designated a career offender because his January 2006 state conviction for

third-degree burglary did not constitute a conviction for a "crime of violence" under Guidelines §

4B1.1. (*See* Cr. Dkt. 311 at 5-9). Hernandez recognized that the Second Circuit, in *U.S. v.*

*Brown*, 514 F.3d 256 (2d Cir. 2008), had "considered the question [of] whether third degree

burglary (N.Y. Penal Law 140.02) fit within the residual clause in section 4B1.2(a), as a 'crime

of violence' and concluded that it did," but argued that "[t]he reasoning of the Second Circuit in

this respect is flawed, running counter to that of sister circuits." (*Id.* at 6, 8). On January 12,

2012, the Government responded, arguing, *inter alia*: "Given that this is settled law in the

Second Circuit that a conviction for Burglary in the Third Degree under New York State Law is

a crime of violence for purposes of the career offender designation under the Guidelines, the

Court should reject the defendant's arguments, find taht [sic] he is a career offender, and

conclude that the applicable advisory Guidelines range in this case is a [sic] 140 to 175 months."

(Cr. Dkt. 320 at 2).

On January 26, 2012, this Court held a sentencing hearing, during which it advised

Hernandez's counsel that it had considered his objections to the PSR but was bound by then-

current Second Circuit precedent dictating that third-degree burglary in New York State

constituted a "crime of violence" under § 4B1.1(a) of the Guidelines and the "residual clause" of

§ 4B1.2(a)(2), which the United States Sentencing Commission has since removed. (*See*

Sentencing Hearing Transcript (Cr. Dkt. 519-2), at 2-3).[1]  This Court accepted the Probation

Department's recommendation and imposed a sentence of 151 months imprisonment to be

served consecutive to his undischarged term of state imprisonment with three years of post-

release supervision.  (*See id.* at 16-17; Sentencing Hearing Minute Entry (Cr. Dkt. 337);

Judgment (Cr. Dkt. 338)).  Hernandez appealed his sentence on January 30, 2012.  (Notice of

Appeal (Dkt. 328)).  On October 12, 2012, the Second Circuit dismissed Hernandez's appeal as

barred by the appellate waiver in the plea agreement.  (*See* Mandate (Dkt. 399)).

### B.    Hernandez's § 2255 Motion

#### 1.    First Submission: *Descamps*

On June 23, 2014, Hernandez filed a *pro se* motion to vacate his sentence pursuant to 28

U.S.C. § 2255.  Though he filed the motion approximately 20 months after his conviction

became final, rendering it untimely under § 2255(f)(1), Hernandez argued that he was asserting a

right newly recognized by the Supreme Court in *Descamps*, a decision issued on June 20, 2013,

and that his motion was thus timely under § 2255(f)(3).  (*See* Mot. at 12-25).  *Descamps*

involved a man who was convicted of being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g) and received an enhanced sentence under the Armed Career Criminal Act

("ACCA"), 18 U.S.C. § 924(e), because he was deemed to have three prior convictions for

"violent felonies," which, under the ACCA, include, among other things, "burglary, arson, or

---

1 In light of the Supreme Court's holding in *Johnson* that the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague (*see infra*), the Second Circuit recently held that the "residual clause" in Guidelines § 4B1.2(a)(2), which is identical to that in the ACCA, is also unconstitutionally vague and that third-degree burglary therefore cannot qualify as a "crime of violence" under the Guidelines' residual clause, thereby recognizing that *Brown* had been abrogated.  *See U.S. v. Welch*, 641 Fed. Appx. 37, 42-43 (2d Cir. Feb. 11, 2016).  Effective August 1, 2016, the Sentencing Commission amended Guidelines § 4B1.2(a)(2) to strike the residual clause.

extortion…" *See Descamps*, 133 S.Ct. at 2281-83; 18 U.S.C. § 924(e)(2)(B)(ii). Descamps

argued that a prior California burglary conviction could not count as a prior offense under the

ACCA because there is a mismatch between California's definition of "burglary" and the

"generic" (*i.e.*, federal and most other states) definition of burglary: California's broader

definition does not require unlawful entry, while the narrower "generic" definition does. *See id.*

at 2282. Rather than accept Descamps' argument and compare the definitions alone, the district

court (later affirmed by the Ninth Circuit) employed what is referred to as the "modified

categorical approach" – it looked to certain documents from the prior California burglary case

that shed light on how Descamps committed the burglary in that particular instance (*i.e.*, whether

he entered unlawfully). *See id.* at 2282-83. The Supreme Court held that it is improper to

employ the "modified categorical approach" where the underlying state offense "contain[s] a

single, 'indivisible' set of elements sweeping more broadly than the corresponding generic

offense," and that courts are to instead to apply the "categorical approach" – *i.e.*, compare the

state and "generic" definitions themselves without regard to the specifics of the particular

underlying offense. *Id.* at 2283.

Under the career offender provision of the Guidelines that existed at the time Hernandez

was convicted and sentenced, the term "crime of violence," as set forth in § 4B1.1(a), was

defined to include "burglary of a dwelling." *See* Guidelines § 4B1.2(a)(2) (2012).[2] In January

2006, Hernandez was convicted in state court of third-degree burglary. Under New York law,

"[a] person is guilty of burglary in the third degree when he knowingly enters or remains

unlawfully in a *building* with intent to commit a crime therein." N.Y. Penal Law § 140.20

---

2 Effective August 1, 2016, the Sentencing Commission amended §4B1.2(a)(2) to remove "burglary of a dwelling" from the list of offenses that constitute "crimes of violence."

(emphasis added).   With respect to criminal trespass and burglary, New York State defines "building" as, *inter alia*: "in addition to its ordinary meaning, includ[ing] any structure, vehicle or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein, or used as an elementary or secondary school, or an inclosed [sic] motor truck, or an inclosed [sic] motor truck trailer."   N.Y. Penal Law § 140.00(2).   As it is possible to be convicted of third-degree burglary in New York based upon one's unlawful entry into structures other than "dwellings," and the *Descamps* Court instructed lower courts not to employ the "modified categorical approach" where the underlying state offense "contain[s] a single, 'indivisible' set of elements sweeping more broadly than the corresponding generic offense," Hernandez argues that his January 2006 state conviction for third-degree burglary was not a conviction for "burglary of a dwelling" under Guidelines § 4B1.2(a)(2) and thus not a prior felony conviction for a "crime of violence" under § 4B1.1(a).   (*See* Mot. at 3-11).

### 2.     Supplemental Submission: *Johnson*

On June 20, 2016, the Federal Defenders filed a letter indicating that, pursuant to E.D.N.Y. Administrative Order 2016-01, it had reviewed Hernandez's case and identified him as having a viable argument that his sentence should be vacated in light of *Johnson*, which the Supreme Court decided on June 26, 2015.   (Cr. Dkt. 499).   The Federal Defenders requested leave to file a supplemental brief on Hernandez's behalf and asked the Court to defer ruling on the § 2255 motion until supplemental *Johnson* briefing was submitted.   (*See id.*).   The Court granted these requests and set a briefing schedule.   (Cr. Dkt. 501).   On July 15, 2016, Hernandez, represented by the Federal Defenders, filed a supplemental brief, arguing that he was entitled to § 2255 relief under *Johnson*.

*Johnson* involved a man who, having pled guilty to being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g), received an enhanced sentence under the ACCA,

because he had three prior convictions for "violent felonies," as defined in the ACCA. *Johnson*,

135 S. Ct. at 2556.   The ACCA defines "violent felony" as follows:

> "any crime punishable by imprisonment for a term of one year …
> that –
>
> (i) has an element of the use, attempted use, or threatened use of
> physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or*
> *otherwise involves conduct that presents a serious potential risk of*
> *physical injury to another.*"

18 U.S.C. § 924(e)(2)(B) (emphasis added).   The Court held that the italicized language in

subsection (ii), commonly referred to as the "residual clause," "both denies fair notice to

defendants and invites arbitrary enforcement by judges," and was thus unconstitutionally vague.

*Johnson*, 135 S. Ct. at 2557, 2563.

Under the Guidelines career offender provision in effect at the time Hernandez was

sentenced, "crime of violence" was defined as:

> (a) … any offense under federal or state law, punishable by
> imprisonment for a term exceeding one year, that –
>
> (1)   has as an element the use, attempted use, or
> threatened use of physical force against the person of
> another; or
>
> (2)   is burglary of a dwelling, arson, or extortion, involves
> use of explosives, or *otherwise involves conduct that*
> *presents a serious potential risk of injury to another*.

Guidelines § 4B1.2(a) (2012) (emphasis added).   As the Guidelines residual clause (the

italicized language in subsection (a)(2)) is identical to the ACCA residual clause that the *Johnson*

Court deemed unconstitutionally vague, Hernandez argues that his January 2006 third-degree

9

burglary conviction cannot be deemed a felony conviction for a "crime of violence" under the

Guidelines § 4B1.2(a)(2) residual clause.   (*See* Johnson Br. at 7-9).   Hernandez, reiterating his

original *pro se* arguments, also argues that, applying the un-modified "categorical approach"

endorsed by the Supreme Court in *Descamps*, his 2006 third-degree burglary conviction cannot

otherwise be deemed a felony conviction for a "crime of violence" under either § 4B1.2(a)(1), as

it can theoretically be committed without actual, attempted, or threatened "physical force against

the person of another," or § 4B1.2(a)(2), as one may be convicted of third-degree burglary in

New York State based upon his unlawful entrance into a structure other than a dwelling.   (*See*

*id.*).

## II.    LEGAL STANDARDS

### A.      § 2255 Generally

28 U.S.C. § 2255(a) provides:

> **(a)** A prisoner in custody under sentence of a court established by
> Act of Congress claiming the right to be released upon the ground
> that the sentence was imposed in violation of the Constitution or
> laws of the United States, or that the court was without jurisdiction
> to impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in

the sentencing court, or an error of law or fact that constitutes a fundamental defect which

inherently results in complete miscarriage of justice."   *Graziano v. U.S.*, 83 F.3d 587, 590 (2d

Cir. 1996) (internal quotations omitted).   "Because collateral challenges are in tension with

society's strong interest in the finality of criminal convictions, the courts have established rules

that make it more difficult for a defendant to upset a conviction by collateral, as opposed to

direct, attack." *Yick Man Mui v. U.S.*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotations

omitted).   A prisoner may receive an evidentiary hearing on his § 2255 motion unless "it plainly

appears from the motion, any attached exhibits, and the record of prior proceedings that [he] is

not entitled to relief…"   *Puglisi v. U.S.*, 586 F.3d 209, 213 (2d Cir. 2009).

**B.       § 2255 Waivers**

It is well-established that a defendant's waiver of his right to appeal or file a § 2255

motion in connection with a plea agreement is presumptively valid and enforceable.   *U.S. v.*

*Riggi*, 649 F.3d 143, 147 (2d Cir. 2011); *Frederick v. Warden, Lewisburg Corr. Facility*, 308

F.3d 192, 195 (2d Cir. 2002).   The Second Circuit has "repeatedly upheld the validity of appeal

waivers if they are knowingly, voluntarily, and competently provided by the defendant."   *Riggi*,

649 F.3d at 147 (quotations, citations, and alterations omitted).   There are limited "'exceptions

to the presumption of the enforceability of a waiver,'" including:

> "… '[ (1) ] when the waiver was not made knowingly, voluntarily,
> and competently, [ (2) ] when the sentence was imposed based on
> constitutionally impermissible factors, such as ethnic, racial or
> other prohibited biases, [ (3) ] when the government breached the
> plea agreement, or [ (4) ] when the sentencing court failed to
> enunciate any rationale for the defendant's sentence, thus
> amount[ing] to an abdication of judicial responsibility subject to
> mandamus.'"

*Sanford v. U.S.*, 841 F.3d 578, 580 (2d Cir. 2016) (quoting *U.S. v. Gomez-Perez*, 215 F.3d 315,

319 (2d Cir. 2000)) (alterations in original).

## III.    DISCUSSION

In response to Hernandez' initial *Descamps* submission, the Government argues, *inter alia*, that Hernandez is barred from collaterally challenging his sentence by the plea agreement's appellate waiver.   (*See* Opp. at 5-6).   Hernandez argues that the plea agreement's appellate waiver is unenforceable because his attorney, Moore, failed to provide effective assistance in connection with the plea process, in violation of Hernandez's Sixth Amendment rights.   (*See* Mot. at 25-28).   It is possible that an attorney's constitutionally deficient performance in connection with the plea process may render a defendant's assent to an appellate waiver in a plea agreement involuntary and/or unknowing, thereby rendering the appellate waiver unenforceable.   However, in order to escape the preclusive effects of an appellate waiver on the grounds of ineffective assistance, a petitioner must have a viable argument that his attorney's performance was constitutionally deficient.   *See U.S. v. Monzon*, 350 F.3d 110, 118-19 (2d Cir. 2004) ("[W]e reject the notion that an appeal waiver becomes unenforceable simply because a defendant 'claims' … ineffective assistance of counsel.   The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious.").   Hernandez does not have a viable ineffective assistance argument.

"[I]n order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that as a result he suffered prejudice."   *U.S. v. Jones*, 482 F.3d 60, 76 (2d Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   Under the first prong, the court must "eliminate the distorting effects of hindsight," "evaluate the conduct from counsel's perspective at the time," and "indulge a strong presumption that counsel's conduct falls within the wide

12

range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.   Hernandez argues

that Moore "opperated [sic] below reasonable standards in urging [Hernandez] to plead guilty via

[a] plea agreement that expressly waives [Hernandez's] right to collaterally attack via § 2255."

(Mot. at 26).   In light of then-binding Second Circuit precedent that third-degree burglary in

New York State constituted a "crime of violence" under the "residual clause" of the then-existing

version of Guidelines § 4B1.2(a)(2), *see Brown*, 514 F.3d at 269, Hernandez argues that Moore

"should have known that [Hernandez's] only other available remedy" to challenge his career-

offender designation on the basis of his prior third-degree burglary conviction "would be through

collateral attack via § 2255…"   (Mot. at 26-27).   Hernandez thus acknowledges that he

qualified as a career-offender under then-binding law, but suggests that Moore should not have

allowed him to enter a plea agreement with an appellate waiver – a move that the Federal

Defenders recognize would likely have meant "reject[ing] … the entire plea agreement" and

proceeding to trial, as such clauses are "standard in every plea agreement in the Eastern District

of New York."   (*See* Johnson Br. at 4, 6).   Given the state of the law at the time, it was entirely

reasonable for Moore to advise Hernandez to enter a plea agreement that incorporated the career-

offender Guidelines sentencing ranges and contained an appellate waiver in exchange for the

Government's agreement to move the Court for a two-level reduction and to dismiss Count Four

of the Indictment.   To the extent Hernandez is arguing that Moore provided ineffective

assistance because he failed to predict that *future* Supreme Court decisions (whether *Descamps*,

*Johnson*, or anything else) would provide him more sturdy footing from which to attack his

career-offender designation, that argument is untenable.   *See, e.g., Swerbilov v. U.S.*, No. 04-

CV-3320 DRH MLO, 2005 WL 1177938, at *4 (E.D.N.Y. May 18, 2005) ("[A]n attorney is not

normally expected to foresee future changes in the law …, and his failure to do so does not

13

constitute ineffectiveness.") (citing *U.S. v. De La Pava*, 268 F.3d 157, 166 (2d Cir. 2001) and

*U.S. v. Gonzalez-Lerma*, 71 F.3d 1537, 1542 (5th Cir. 1981)) (additional citations omitted).

Thus, the Court rejects Hernandez's argument that he should not be bound by the appellate

waiver based upon Moore's purported ineffective assistance.

In response to Hernandez's *Johnson* submission, the Government again argues, *inter alia*,

that Hernandez's § 2255 motion – including the new *Johnson* branch of the motion – is barred by

the plea agreement's appellate waiver. (*See* Johnson Opp. at 5-8). Hernandez argues that the

appellate waiver should not be enforced because, in light of *Johnson*, his "sentence is

unconstitutional and denying him the right to collaterally attack this sentence would be

fundamentally unfair." (Johnson Br. at 4; *see id.* at 3-7). As Hernandez recognizes (*see*

Johnson Reply at 1), the Second Circuit has noted that "the possibility of a favorable change in

the law after a plea is simply one of the risks that accompanies pleas and plea agreements." *U.S.*

*v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005). "But," Hernandez argues, "*Johnson* is unlike

other favorable changes that a defendant might anticipate; it is a sea change." (Johnson Reply at

1). In *Sanford*, a decision issued after Hernandez's initial and supplemental § 2255 submissions

were fully-briefed, the Second Circuit rejected this line of argument, holding that, even where a

petitioner invokes *Johnson* to challenge his sentence, an otherwise enforceable appellate waiver

that the petitioner knowingly and voluntarily agreed to bars him from pursuing a § 2255

challenge. *Sanford*, 841 F.3d at 580-81; *accord Lombardo v. U.S.*, Nos. 11-cr-345, 16-cv-3320

(AMD), 2016 WL 8193200, at *1-2 (E.D.N.Y. Nov. 28, 2016). Thus, the fact that Hernandez is

now raising a *Johnson* argument does not render an otherwise enforceable appellate waiver

unenforceable.

Finally, the record demonstrates that the waiver is enforceable: the plea agreement, which Hernandez signed, unequivocally states that he "agrees not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. § 2255 … the conviction or sentence in the event that the Court imposes a term of 188 months or below"; he affirmed during his plea hearing that he had read the plea agreement, reviewed it with Moore, and understood it; he affirmed during his plea hearing that he understood that he was agreeing to waive his right to appeal any sentence of 188 months or less; and this Court imposed a sentence of 151 months imprisonment.  Hernandez knowingly and voluntarily agreed to the waiver, was sentenced below the 188-month threshold, and will be held to his bargain.  Accordingly, the plea agreement's waiver provision bars the present motion, and the motion is denied.

## IV.  CONCLUSION

For the reasons set forth above, Hernandez's motion to vacate, set aside, or correct his sentence of imprisonment pursuant to 28 U.S.C. § 2255 is denied.   Given that it is clear from the record that Hernandez is not entitled to § 2255 relief, the Court will not hold an evidentiary hearing on his motion.   The Court declines to issue a certificate of appealability because Hernandez has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).   The Clerk of the Court is directed to serve notice of entry of this order upon Hernandez and to close this case.

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge


Dated: June 1, 2017
      Central Islip, New York